KENNETH J. MONTGOMERY, PLLC
Victor A. Dunlop (VAD-8571)
43A 5th Avenue
Brooklyn, New York 11217
(718) 403-9261

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NORMAN SHEPHERD III,

                Plaintiff,

-against-

CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT and LIEUTENANT
WILLIAM DOYLE of the 5th COMMAND,

                Defendants.
-----------------------------------------------------------X

13 CIV



COMPLAINT

Docket No:

Jury Trial Demanded

Plaintiff NORMAN SHEPHERD III, by his attorneys, Kenneth J. Montgomery, PLLC, hereby respectfully alleges for his complaint against the City of New York, the New York City Police Department and Lieutenant William Doyle of the 5th Command (collectively, "Defendants") as follows:

## NATURE OF THE INSTANT ACTION

1.    This is a civil action, brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law and the constitution of the State of New York, against the City of New York (the "City"), Lieutenant William Doyle of the 5th Command ("Lieutenant Doyle"), and his employer, the New York City Police Department (the "NYPD").

2.    The instant action seeks to hold the Defendants liable for misconduct under the federal civil rights statute, 42 U.S.C. §1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). The unlawful actions of the Defendants, alleged hereunder, resulted from affirmative *de facto* municipal policies, practices and customs to violate the constitutional rights of criminal suspects and defendants, or from deliberate

indifference by policy-making officials, acting on behalf of the City of New York, to such violations.

3. As Plaintiff will demonstrate hereunder, as a matter of policy, the actions of Lieutenant Doyle, which violated the rights of the Plaintiff, reflects a corrupt culture of misconduct and physical abuse indicative of NYPD police officers that has long existed at New York City Police precincts. In fact, despite being arrested and charged for menacing and weapons possession in connection with threatening his wife with a masonry hammer and his service revolver in November 2005 while assigned to the 13th Precinct, Lieutenant Doyle nonetheless was assigned to a subsequent supervisory position as the lieutenant of the 5th Precinct and caused Plaintiff's damages alleged hereunder (See annexed hereto as Exhibit B, *NYPD Wife-Saver Charged with Threatening His Own* and Exhibit C, *Officer Arrested in Inquiry of 73rd Precinct*, dated March 30, 1994.

4. By this action, Plaintiff seeks redress for the violations of his constitutional and civil rights and to recover damages he suffered as a result of the incidence complained of hereunder, including but not limited to damages for severe physical injuries, legal fees, costs and expenses associated with defending the criminal proceedings, loss of reputation, costs and expenses, mental anguish, pain and suffering, inconvenience, humiliation, and fear.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1343, as this action seeks redress for the violation of Plaintiff's federal constitutional and civil rights.

6. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over any and all state constitutional or common law claims ("State Claims") that are so related to the instant claims within the original jurisdiction of this court that they form part of the same controversy. Plaintiff has satisfied all procedural prerequisites with respect to their state law claims: Plaintiff filed and served a notice of claim on the City of New York and the New York City Police Department on October 8, 2010, a copy of which is annexed hereto as Exhibit A. Although 30 days have elapsed since service of Plaintiff's initial notice of claim, the City has not adjusted or paid such claim. Plaintiff testified in a hearing pursuant to GML §50H on February 24, 2011.

7. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

8. Plaintiff Norman Shepherd III is a resident of the State of New York, County of Queens.

9. Defendant City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. Upon information and belief, it is authorized under the laws of the State of New York to maintain a police department, the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers. The NYPD's operations include the operations as described herein. Upon information and belief, the federal government partially funds the law enforcement activities of the NYPD.

10. Defendant New York City Police Department ("NYPD") is an agency of the City of New York. Upon information and belief, Lieutenant William Doyle, a defendant named hereunder, holds a supervisory position as an agent and employee of the NYPD. The NYPD is legally responsible for torts its agents and employees commit within the scope of his/her employment and/or under color of law.

11. Defendant Lieutenant William Doyle ("Lieutenant Doyle"), at all relevant times, is and was a commissioned officer employed by the NYPD, and acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the City of New York and acted within his scope of employment. He is sued in both, his individual and official capacities.

12. At all relevant times, Lieutenant Doyle acted under color of state law in the course and scope of his duties and functions as an agent, employee, and officer of the City of New York and the NYPD.

13. At all relevant times, defendant City was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD employees. In addition, defendant City was responsible for ensuring that

its employees, including Lieutenant Doyle, obey the laws of the United States and the laws of the State of New York.

## JURY DEMAND

14. Plaintiff demands a jury in this action.

## FACTUAL ALLEGATIONS

15. On January 10, 2010, while Plaintiff was riding in the passenger seat of a vehicle with two (2) other individuals in the vicinity of the 5th Precinct, officers of the NYPD signaled for the operator to pull over and the vehicle's operator complied.

16. Upon information and belief, the officers of the NYPD requested the vehicle's operator's license and registration to be cross-referenced for possible outstanding infractions.

17. Upon information and belief, the officers of the NYPD advised the operator of the vehicle and Plaintiff, who was sitting in the passenger seat, that the vehicle's operator's license was suspended as a result of unpaid ticket in Delaware and as a result, the vehicle's operator would be placed under arrest and the vehicle would be taken to the 5th Precinct.

18. Upon information and belief, the officers of the NYPD advised Plaintiff and the other passenger of the vehicle that the vehicle's owner, who was not at the scene, had to go to the 5th Precinct in order to retrieve the vehicle.

19. Upon information and belief, Plaintiff and the other passenger of the vehicle traveled by taxi to the 5th Precinct in order to supply the desk sergeant with the name of the vehicle's owner.

20. Upon information and belief, Plaintiff and the other passenger of the vehicle were immediately verbally assaulted by Lieutenant Doyle upon arriving at the 5th Precinct.

21. Upon information and belief, Plaintiff advised Lieutenant Doyle that he did not want to cause

any issues and that he was primarily there to give him the name of the vehicle owner so that she could retrieve the vehicle.

22. Upon information and belief, Lieutenant Doyle screamed profanities at Plaintiff and told him to leave his precinct. As Plaintiff was exiting the 5th Precinct, Lieutenant Doyle grabbed Plaintiff from behind, twisting his right wrist and thrusting him through the door.

23. Upon information and belief, Lieutenant Doyle ordered the officers of the NYPD who were present to arrest Plaintiff and the officers complied by slamming Plaintiff into the wall, causing Plaintiff severe pain and effectively tearing Plaintiff's labrum, which would later require surgery and physical therapy.

24. Upon information and belief, Plaintiff advised the arresting officers that he was in immense pain and he heard a "pop" in his shoulder.

25. Despite his obvious injuries, the arresting officers handcuffed Plaintiff behind his back and thrust him into a holding cell where he remained for approximately three (3) hours. Plaintiff advised the arresting officers that he was in immense pain and requested the handcuffs to be placed in the front. Plaintiff's handcuffs remained behind his back.

26. Upon information and belief, Plaintiff advised that arresting officers and Lieutenant Doyle that he was going to become a member of the Fire Department of New York ("FDNY").

27. Upon information and belief, once Plaintiff advised Lieutenant Doyle that he passed his physical exam, Lieutenant Doyle responded, "Well, I just cost you your job".

28. Subsequently, Plaintiff was transported to Central Bookings, where he remained in handcuffs until he was arraigned on the charge of obstructing governmental authority, to which he pled not guilty.

29. The charge of obstructing governmental authority was dismissed in or about June 2010.

30. Defendants knew that the charges were knowingly false and malicious.

## MUNICIPAL LIABILITY

### The NYPD's History of a Policy, Practice, and/or Custom of Excessive Force against Suspects

31. The NYPD has a well-documented history of using excessive force against harmless suspects while conducting investigative stops and/or arrests.

32. Over the years, the NYPD has been named as a defendant, along with the City, in lawsuits based on the unlawful and unconstitutional actions of its employees. More specifically, members of the NYPD have been accused of using excessive force during the questioning or arresting of suspects. In fact, civilian complaints have been steadily on the rise as a result of the number of NYPD officers and detectives using excessive force against the civilians that they encounter.[1]

33. Indeed, several individuals, including a state Supreme Court judge, have accused the NYPD of using excessive force against them during questioning, arrests and in some instances, when these individuals may have been bystanders. Most of these individuals have memorialized their allegations into complaints and subsequently filing lawsuits.

34. For example, on or about June 6, 2012, State Supreme Court Judge Thomas Raffaele accused an NYPD officer of using excessive force on him while other members of the NYPD were questioning a suspect. Specifically, Judge Raffaele, alleged that, while in casual clothing, he was observing the NYPD using force while subduing a suspect and he therefore called 911. Despite standing off to the side of the crowd that formed, Judge Raffaele claimed that a member of the NYPD struck him in the throat without provocation. Judge Rafaele stated that he believed that if he had not moved his head, the attacking NYPD officer would have killed him.[2]

---

[1] See Gendar, Alison. *Civilian Complaints of NYPD Excessive Force Up 50% Over Last 2 Years.* New York Daily News (June 11, 2009), a copy of which is annexed hereto as Exhibit D.

[2] See *State Court Judge Says NYPD Officer Used Excessive Force Against Him.* CBS Local (June 6, 2012), a copy of which is annexed hereto as Exhibit E.

35. Another documented example of allegations of the NYPD's use of excessive force took place during the now notorious demonstration known as "Occupy Wall Street". On or about July 26, 2012, a group of legal experts published a report, containing approximately 130 cases, wherein the action that they believe can qualify as officers and members of the NYPD using excessive force against otherwise peaceful protesters.[3]

36. One of the "Occupy" protestors alleged that the NYPD used pepper spray to prevent the videotaping of the NYPD's handling of a suspect [(See .n3 below)]. In addition, a journalist that was quoted in the legal experts' report claimed that, "Physically attacking people with a chemical agent for no reason – when you have cops doing that, you don't feel so safe when you see cops" [sic] [(See .n3 below)].

37. In or about November 2011, a thirty-five (35) year old woman alleged that while at the 73rd Precinct, members of the NYPD handcuffed her to a bench in the squad room, locked in a filthy holding cell and was continuously asked to lie concerning a crime.[4] The woman further alleged that she urinated on herself during the confinement because she was denied an escort to the restroom [(See n.4 below)].

38. In addition to the aforementioned allegations, Aviva Aranovich, a classic pianist sued the City of New York and the NYPD alleging that she was "roughed up" after she misplaced her ticket while attending an opera at the Metropolitan Opera.[5]

39. Finally, Stephanie Adams, a former Playboy playmate was awarded $1.2 million dollars for injuries she suffered at the hands of the NYPD in 2006.[6] According to the lawsuit, Ms. Adams called 911 after she was threatened by a taxi driver and despite complying with all of the 911 operator's instructions by standing across the street to await the arrival of NYPD, Ms. Adams alleged

---

[3] See Knuckey, Sarah. *Jury Confirmed: NYPD Used Excessive Force on 'Occupy' Protesters* (July 26, 2012), a copy of which is annexed hereto as Exhibit F.
[4] See Brayton, Ed. *Those NYPD 'Heroes' Strike Again* November 1, 2011), a copy of which is annexed hereto as Exhibit F.
[5] See Ladzinski, Elizabeth. *Pianist Sues NYPD Officer for 'Excessive Force'* (March 9, 2011), a copy of which is annexed hereto as Exhibit G; see also *Aranovich v. City of New York*, Index No: 102882/2011 (Sup. Ct., NY County).
[6] See Haerr, Holly. *Ex-Playboy Playmate Wins Excessive Force Lawsuit Against NYPD* (February 22, 2012), a copy of which is annexed hereto as Exhibit H; see also *Adams v. City of New York*, Index No: 113646/2006 (Sup. Ct., NY County).

that her hair was yanked and she was shoved to the ground at gunpoint [(See .n6 hereunder)].

### The City of New York and the NYPD negligently hires, retains and trains its police officers and members

40. The City of New York protects and isolates members of the NYPD from any personal liability for civil damages when officers such as Lieutenant Doyle are accused of violating the constitutional rights of individuals, by indemnifying officers against that are accused of committing bad acts.

41. By doing so, the City of New York removes and neutralizes the strong deterrent effects that documented accusations and subsequent liability would otherwise have on NYPD officers accused of committing acts that violate individuals' constitutional rights.

42. Moreover, the City of New York and the NYPD do not discipline its members for incurring civil liability, nor for being accused of violating the constitutional rights of individuals and as a result, members of the NYPD continue to commit unconstitutional acts against individuals in their custody.

43. Furthermore, the City of New York and the NYPD do not train or educate their officers and employees for incurring civil liability, or as a result of receiving civilian complaints against their officers' unconstitutional acts of violence against individuals in their custody.

44. Shielded by these policies of the City of New York and the NYPD, officers and employees continue to commit unconstitutional acts. Sergeant Lieutenant Doyle is an example of this practice.

45. An example of Lieutenant Doyle's propensity to commit violent and unconstitutional acts against other individuals is well documented in his arrest that occurred on or about November 22, 2005. According to the New York Post, Lieutenant Doyle was celebrating his birthday when his wife arrived with a cake in furtherance of the celebration. According to the New York Post, Lieutenant Doyle was upset by his wife's tardiness and also upset that the birthday cake did not have ice cream. As a result,

Lieutenant Doyle poured a glass of wine on the cake and placed a masonry hammer to his wife stating that, "I could kill you right now and open up your head." See Exhibit B.

46. According to court papers, Lieutenant Doyle's wife further alleged that he "pressed his service revolver to the back of [her] head" telling her that he would kill her.

47. Similar to the allegations made my Lieutenant Doyle's wife in 2005, here, Lieutenant Doyle assaulted Plaintiff by grabbing him by the arm and thrusting him through the precinct doors and then ordering his arrest, which resulted in Plaintiff being futhrer assaulted by being thrown against the wall and suffering a severe labium tear in his left shoulder.

## FIRST CAUSE OF ACTION

DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §1983 AGAINST DEFENDANT CITY OF NEW YORK, DEFENDANT SERGEANT MICHELE WILLIAMS AND DEFENDANT P.O. TOLENTINO NAZAIRE

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 with the same force and effect as if fully set forth herein.

49. Defendant City of New York and its agents, servants and employees, including but not limited to Lieutenant Doyle deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. §1983.

50. All of the aforementioned acts of all defendants named herein were carried out under the color of state law.

51. Lieutenant Doyle carried out the acts complained of herein in his official capacity as a police officer with the actual and/or apparent authority attendant thereto.

52. Lieutenant Doyle carried out the acts complained of in his capacity as a police officer, pursuant to the customs, usages, practices, procedures, and the rules of defendants City of New York and the NYPD, as a

9

ranking officer of the NYPD.

52. All defendants, collectively and individually, while acting under color of state law, engaged in unconstitutional conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality's authority, which is forbidden by the Constitution of the United States.

54. As a result of the defendants' conduct, which inherently violated the Constitution of the United States, caused plaintiff significant harm and injury.

55. As a result of the defendants' unconstitutional conduct, plaintiff demands judgment against all defendants in a sum of money to be determined at trial.

## SECOND CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' MALICIOUS PROSECUTION

56. Lieutenant Doyle instituted criminal proceedings against Plaintiff.

57. The prosecution ended in Plaintiff's favor as the only charge was dismissed.

58. There was no probable cause to initiate these proceedings.

59. Lieutenant Doyle acted maliciously in initiating the proceedings.

60. Plaintiff was deprived of his liberty as a result.

61. As a result, Plaintiff was harmed or injured, and seeks compensation in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' USE OF EXCESSIVE FORCE AND PLAINTIFF'S INJURIES WHILE IN

CUSTODY

62. Lieutenant Doyle assaulted Plaintiff by grabbing him by his wrists and thrusting him through the precinct door and subsequently ordering his arrest.

63. Police officers of the NYPD followed Lieutenant Doyle's orders and subsequently arrested Plaintiff by slamming him against the wall, causing a labral tear in his shoulder and placing him in handcuffs, which were too tight and left on for an unreasonable period of time.

64. Lieutenant Doyle placed Plaintiff into a holding cell with his hands cuffed behind him. During this time Plaintiff complained of agonizing pain and in doing so, he denied Plaintiff medical attention.

65. Lieutenant Doyle's assault on Plaintiff caused him significant injuries to his shoulder that required surgery to repair.

66. As a result, Plaintiff was severely injured and seeks compensation in a sum to be determined at trial.

### FOURTH CAUSE OF ACTION

MUNICIPAL LIABILITY UNDER *MONELL* UNDER 42 U.S.C. §1983
ARISING FROM UNCONSTITUTIONAL MUNICIPAL POLICIES AND CUSTOMS

67. Defendant City of New York and NYPD established official policies directing and promoting unconstitutional practices by NYPD officers and have tolerated, condoned and permitted widespread unconstitutional practices by NYPD officers, including Lieutenant Doyle.

68. Defendant City of New York indemnifies and shields NYPD officers who repeatedly and habitually violate constitutional rights, such as Lieutenant Doyle.

69. Defendant City of New York fails to discipline police misconduct, thereby insuring that such misconduct continues.

70. Defendant City of New York implements, tolerates and fails to punish unlawful excessive use of

force by police officers, as is evident here by its failure to demote and/or discipline Lieutenant Doyle.

71. Defendant City of New York implements, tolerates and fails to punish unlawful and false arrests.

72. These polices and practices caused the unlawful conduct of Lieutenant Doyle.

73. As a result, plaintiff was harmed and injured and seeks compensation in a sum to be determined at trial.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction and:

a) Invoke pendent party and pendent claim jurisdiction;
b) Award appropriate compensatory and punitive damages;
c) Empanel a jury;
d) Aware attorneys fees and costs;
e) Award such other and further relief as the Court deems to be proper and in the interest of justice.

DATED: Brooklyn, New York
January 3, 2013

Respectfully submitted,
KENNETH J. MONTGOMERY, PLLC

Victor A. Dunlop (VAD-8571)

43A 5th Avenue
Brooklyn, New York 11217
(718) 403-9261 Telephone
(614) 455-9261 Facsimile
Attorneys for Plaintiff